# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2025

Lyle W. Cayce
Clerk

No. 24-50267

———

CRYSTAL AYON, *Mother of* M.R.A., *a minor child*,

*Plaintiff—Appellant*,

*versus*

AUSTIN INDEPENDENT SCHOOL DISTRICT; CESAR MALDONADO, *Individually*; ROGELIA LOPEZ, *Individually*; CLAUDIA SANTAMARIA, *Individually*; ALEX PHILLIPS, *Detective, Austin Independent School District Police Department*; ASHLEY GONZALEZ, *Police Chief, Austin Independent School District Police Department*,

*Defendants—Appellees*.

———

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-209

———

Before ELROD, *Chief Judge*, and JONES and STEWART, *Circuit Judges*.
EDITH H. JONES:[*]

Cesar Maldonado repeatedly molested M.R.A. on the special-education school bus that he drove for Austin Independent School District

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

("AISD"). He is now serving a twenty-year prison sentence after pleading guilty to related charges. Crystal Ayon is the mother of M.R.A. She sued AISD and several of its employees under 42 U.S.C. § 1983 and Title IX, alleging that their deliberate indifference enabled the sexual assaults. The district court entered judgment against Maldonado after he failed to appear, dismissed the remaining individual defendants due to qualified immunity, and granted summary judgment to AISD on the basis that there was insufficient evidence of deliberate indifference. Ayon argues in this limited appeal that there is a genuine dispute whether AISD acted with deliberate indifference. We AFFIRM.

## I.

M.R.A. is a minor with special needs related to a speech impediment. Starting in 2018, when M.R.A. was five years old, she attended a special-education program at Uphaus Early Childhood Center ("Uphaus") in AISD. She rode a bus specifically reserved for special-education students. Cesar Maldonado was the bus driver. Regalia Lopez was the bus monitor. Somewhere between 18,000 and 19,000 children depend on AISD buses for their commute. AISD buses service several hundred regular routes. They also are used for transporting students to approximately 8,000 athletic events and field trips each year.

On May 25, 2018, shortly after she arrived home from school, M.R.A. revealed to her mother, Ayon, that Maldonado had touched her private parts on several occasions when she rode the bus. Ayon immediately shared this information with the bus monitor. The next week, Ayon informed an Uphaus administrator, who promptly relayed the information to AISD police.

Maldonado was placed on administrative leave while AISD police investigated the allegations. Camera footage pulled from the bus confirmed that Maldonado had assaulted M.R.A. multiple times in the preceding weeks.

Each of the documented incidents occurred in the morning, in the time between when Maldonado arrived at Uphaus and when school staff retrieved the students from the bus.

AISD did not review the camera footage until after it received the report. Nor did it employ anyone to regularly monitor camera footage from its buses. The cameras installed in AISD buses do not support live monitoring. And data storage limits only allowed AISD to review video footage within about three weeks of recording.

AISD police interviewed the bus monitor, who maintained that she had never witnessed Maldonado touch M.R.A. or received any complaints about Maldonado. AISD protocol permitted bus monitors to get off the bus at times (e.g., for a water or restroom break) so long as another adult remained on the bus with the children. Maldonado later confessed that he had inappropriately touched M.R.A. on multiple occasions when the bus monitor was absent. AISD police arrested Maldonado, who was immediately fired, then prosecuted, convicted and sentenced to prison.

Ayon sued Maldonado, AISD, and several AISD employees in their individual capacities. The district court granted a motion to dismiss the employees on qualified-immunity grounds. Maldonado failed to appear, and the district court entered default judgment against him for $5,000,000. Those decisions are not at issue.

Ayon appeals the district court's grant of summary judgment to AISD on the Section 1983 and Title IX claims. She contends that on the Section 1983 claim, there was sufficient risk of constitutional violations to raise a question of material fact whether AISD acted with deliberate indifference. She makes a similar argument under Title IX.

No. 24-50267

## II.

"This court reviews a grant of summary judgment de novo, applying the same standard as the district court." *Luminant Mining Co. v. PakeyBey*, 14 F.4th 375, 379 (5th Cir. 2021) (internal quotation marks and citation omitted). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). The movant may satisfy its burden by pointing to an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). The nonmovant must then set forth specific facts that show a genuine issue for trial. "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 134 S. Ct. 1861, 1863 (2014) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986)). But the nonmovant cannot prevail by relying on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 860 (5th Cir. 2004) (citation omitted).

## III.

### A.

To avoid summary judgment for AISD on her Section 1983 claim, Ayon must produce sufficient evidence to justify a reasonable jury finding that: (1) an official policy (2) promulgated by AISD (3) was the moving force behind the violation of a constitutional right.[1] *Groden v. City of Dallas*, 826

---

[1] Case law establishes that a student who is sexually assaulted at a public school is "deprived of a liberty interest recognized under the substantive due process component of

F.3d 280, 283 (5th Cir. 2016).  Because the relevant AISD policies are not unconstitutional on their face, Ayon must also produce evidence that tends to show they were adopted "with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407, 109 S. Ct. 1382, 1390 (1997)).  This latter requirement proves fatal for her claim.

Ayon contends that the relevant question is whether, under the totality of the circumstances,

> it would be obvious that the [video camera and bus monitor policies] would cause constitutional violations to AISD students where (i) a sexual predator is driving a bus with video cameras that he knows are not monitored and capturing footage that no one will watch unless a report is made; (ii) the passengers are vulnerable special needs elementary students who require a bus monitor; and (iii) the only adult eyes watching the sexual predator, the bus monitor, is allowed to leave the bus at any given time.

But Ayon produced no evidence in the district court to prove that (1) AISD knew sexual predators were driving school buses; (2) AISD bus drivers knew cameras were not monitored; or (3) AISD should have known students on a special-education bus suffer a unique risk of constitutional violation without a bus monitor on board at all times.  Evidence in the record contradicts all three assumptions.

---

the Fourteenth Amendment."  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994).

First, AISD representatives testified in depositions that AISD conducts background checks, collects fingerprints, and requires drug testing for bus driver applicants, which undermines claims that AISD knew it employed sexual predators.  Second, AISD bus drivers are not told, during training or in their procedure manual, whether cameras are monitored, and this undermines claims that AISD bus drivers knew that cameras are not regularly monitored.  Third, none of the previous sexual assault incidents that occurred in AISD involved a bus driver exploiting bus monitor rules on buses for special-education students, which undermines claims that AISD should have known about a unique risk to these students.

Shed of these unfounded assumptions, the proper inquiry is whether it would be obvious to AISD that the combined policies would cause constitutional violations to students where (1) AISD checks to ensure its drivers are not known sexual predators; (2) AISD buses are fitted with video cameras and drivers are not told about monitoring procedures; (3) AISD has never had a reported incident involving a special-education student; and (4) bus monitors are allowed to leave the bus only for short breaks.  Ayon has failed to produce sufficient evidence for a reasonable jury to conclude that the potential for constitutional violations was "obvious" in the light of these facts.

Deliberate indifference is a "degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight."  *James v. Harris County*, 577 F.3d 612, 617–18 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992)). Sufficient proof that constitutional violations were obvious "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293,

309 (5th Cir. 2004) (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003)).

Ayon relies in part on deposition testimony in which the chief of police for AISD was asked, "Students being exposed to sexual predators is a risk to the district. Fair?" He replied, "Yeah. It's a risk, period. Yeah." He was also asked, "Do you think relying on a special needs child to make a report is an effective way of preventing abuse of special needs children?" He replied, "No." But this exchange does not suggest that the risk of constitutional violations on AISD buses was "obvious." The admission that sexual predators are "a risk" to students says nothing of the obviousness of that risk. And the admission that relying on a special needs child to make a report is an ineffective way to prevent abuse is insignificant because AISD did more to prevent abuse by installing cameras on its buses. It cannot be inferred from this exchange that AISD perceived an "obvious" risk to special-education students.

Nor was there a sufficient pattern of previous incidents to make such a risk objectively "obvious." AISD produced the police reports from every incident involving allegations of sexual misconduct on a bus since 2013. Reports were produced for ten alleged employee-student incidents and seven student-student incidents. Only twice were charges brought for employee-student misconduct. Charges were substantiated and led to an arrest in one case, and in the other case the charges were determined to be unfounded and dismissed. The one substantiated incident—a 2015 series of assaults by a bus driver—occurred before AISD installed cameras on its buses. The district court correctly concluded that this "single prior substantiated incident" was insufficient to establish the obviousness that constitutional violations would occur.

Ayon submitted evidence of nine prior sexual assaults on AISD property—including the same 2015 series of assaults. Seven of those incidents did not occur on a bus, but occurred in school facilities, where live monitoring cameras are installed. If anything, those incidents undercut her argument that monitoring bus cameras would have prevented the sexual assault from occurring here. Five of those incidents involved student-student issues. And camera policies were not alleged to have played a role in any of the nine incidents. This is plainly insufficient to establish a pattern that would make constitutional violations under AISD's camera policies "obvious." *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010).

In short: Ayon identifies just one arguably similar violation from a five-year period in a school district that comprises 72,000 students, 116 schools, and 10,000 employees. No other student was injured like M.R.A. after AISD installed cameras on its buses. Finding liability on these facts would be equivalent to imposing "liab[ility] on the theory of respondeat superior, which is expressly prohibited by *Monell*." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978)). *See also Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (requiring "notice of a pattern of similar violations" (emphasis removed)); *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 359 (5th Cir. 2014) (holding that in the absence of similar injuries resulting from the same policy or activity a school district could not "have reasonably predicted physical injuries like [those incurred by the plaintiff] would [have] occur[ed]"). Accordingly, Ayon has failed to establish a genuine dispute whether AISD's policies made constitutional violations "obvious."[2]

---

[2] Ayon also argues that AISD had sufficient notice because of the "single-incident exception," which recognizes that "in a limited set of cases" the plaintiff "may establish

No. 24-50267

**B.**

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 1503 (2005). It provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Ayon argues that AISD violated Title IX because it maintained a policy of deliberate indifference to reports of sexual misconduct, which created a "heightened risk" of sexual harassment that was "known or obvious." The district court held that Title IX heightened-risk claims are not cognizable in cases of employee-to-student harassment. This court need not consider whether that is a correct statement of the law because a heightened-risk claim in this case would suffer the same flaw as Ayon's Section 1983 claim: insufficient evidence that constitutional violations were "obvious" in the light of AISD policies.

Ayon would fare no better even if she asserted a traditional Title IX claim. Plaintiffs in this circuit have a traditional Title IX claim where an "appropriate person" had "'actual knowledge' of the discrimination" and

---

deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge*, 336 F.3d at 372–73 (internal quotation marks omitted). Ayon relies on the 2015 series of sexual assaults to argue it was "obvious" a constitutional violation would result from AISD policies. This argument fails for at least two reasons. First, Ayon only raised this argument below in the context of her Section 1983 failure-to-train claim, which she forfeited on appeal. *See Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 827 n.6 (5th Cir. 2024) (citation omitted). Second, the 2015 series of sexual assaults—which occurred on a bus without cameras—could not have made it "obvious" that a constitutional violation would occur in the different context where a bus monitor is allowed to temporarily leave a bus installed with unmonitored cameras.

responded with "deliberate indifference" despite being provided "an opportunity for voluntary compliance." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289–90, 118 S. Ct. 1989, 1999 (1998). Such claims presuppose that "an official who is advised of a Title IX violation refuses to take corrective action." *Id.* at 290, 118 S. Ct. at 1999. They are "based on allegations that the defendants failed to address sexually hostile environments after receiving reports of sexual assault." *Doe v. Tex. A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022) (collecting cases).

AISD received a credible report in 2015 of an employee-student sexual assault on a school bus, and it took prompt corrective action by installing cameras on its entire bus fleet. Here, Maldonado was immediately suspended, investigated, fired, and then arrested, charged, and incarcerated. These facts exemplify anything but "fail[ing] to address sexually hostile environments," especially in the light of circuit precedent, which holds that a police investigation after a report of sexual misconduct tends to negate the possibility of deliberate indifference. *See, e.g.*, *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 376 (5th Cir. 2019) (finding no deliberate indifference to sexual assault where school district police department launched an investigation and interviewed students). Ayon therefore cannot state a traditional Title IX claim.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.